

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF NORTH CAROLINA**
**GREENSBORO DIVISION**



SEALED

| | |
|---|---|
| **Anne Martinez**, individually and on behalf of all other persons similarly situated, <br><br> Plaintiffs, <br> v. <br><br> **RegisterFly, Inc.,** <br> **Unifiednames Inc.** <br> **Hosting Services Group Inc.** <br> **Kevin Medina,** in his personal capacity and as an agent of RegisterFly, Inc. and as an agent of Unifiednames Inc. <br> **John Naruszewicz,** in his capacity as an agent of both Unifiednames and RegisterFly, <br> **eNom,** and <br> **ICANN,** <br><br> Defendants. | **1:07 CV 00188** <br><br> Civil Action No 07 _____ <br><br><br> **COMPLAINT – CLASS ACTION** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Anne Martinez, individually and on behalf of all other persons similarly situated, by her

undersigned attorney, for her complaint against defendants, alleges the following based upon

personal knowledge as to herself and her own acts, and information and belief as to all other

matters based upon, *inter alia,* the investigation conducted by her and her attorney, which

included, among other things, a review of the defendants' public documents, letters and

publications made by ICANN, announcements made by defendants, information in the verified

complaint filed by insiders of the Defendant corporation in United States District Court in the

District of New Jersey in Civil Action No. 07 –CV – 703 (PGS) (Exhibit 20 UNI Complaint),

and the subsequent Consent Order entered March 2, 2007 (Exhibit 25 Consent Order) and

subsequent Order by the Honorable Peter G. Sheridan. (Exhibit 28 Order dissolving prior

Consent Order); wire and press releases published by and regarding defendants, reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery, and therefore alleges as follows:

## NATURE OF THE CASE

1.      This is a class action brought in the name of Anne Martinez, individually and on behalf of all others similarly situated.

2.      While the exact classes will be determined by the Court, the Plaintiff alleges there are currently four classes of plaintiffs, but it is anticipated that there may be several additional classes of plaintiffs in this litigation after discovery is completed.

3.      The case involves all domain name registrants who registered or attempted to register domain names with the defendant RegisterFly, Inc. ("RegisterFly" or its affiliates, subsidiaries, parent companies, or agents), or who currently hold domain name registrations through RegisterFly, during the period from when RegisterFly.com first began registering Domain Names through eNom.com (and later as Top Class Names, Inc.) through the present, and the future plaintiffs who may contract with the Defendant during the pendency of this action; and more specifically the Plaintiff is a member of a class of plaintiffs who:

> 1) registered their domain names with ICANN through Registerfly.com when RegisterFly was a reseller of the services of eNom, and thus had their actual registration recorded through eNom, and have suffered damages from both eNom and RegisterFly in a battle between the two registrars; and

2) owned domain names which were commandeered by Defendant Medina personally and / or RegisterFly, and have not yet been able to get ICANN to correct the ownership violation;

3) contracted RegisterFly to renew a domain name but RegisterFly allowed the domain to lapse; and

4) have been harmed by ICANN's refusal to enforce quality measures that it is obligated to enforce.

## JURISDICTION

4. This Court has diversity jurisdiction under 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 2201, as the instant case is a civil action between citizens of different states and the amount in controversy exceeds $75, 000.

5. This Court also has diversity jurisdiction under 28 U.S.C. § 1332(d)(2) in that the civil action brought by a member of the class who is a citizen of a State different from any Defendant, and the Class is expected to have members from all 50 States and many foreign countries, and the amount in controversy is expected to exceed $5,000,000.

## VENUE

6. Venue is proper pursuant to 28 U.S.C. §§ 1391(a)(2) and (3) because each of the Defendants conduct substantial business in the Middle District of North Carolina.

7. Independently, venue is also proper in this district as it is a central point between Defendant RegisterFly's two corporate offices in New Jersey and Miami, and ICANN's office in California.

## PARTIES AND PERSONAL JURISDICTION

8. Plaintiff Anne Martinez is an individual resident of North Carolina, who is a sole proprietor of several web based businesses.

9. Defendant RegisterFly, Inc. ("RegisterFly") is a New Jersey corporation with its principal place of business in Boonton, New Jersey. On information and belief it has employees in Miami Florida or agents through out the Untied States and conducts substantial business in this District through solicitation via the internet.

10. On information and belief Defendant Unifiednames Inc. (UNI) is owned and controlled by Defendant Kevin Medina. Based on court documents, Defendant Kevin Medina conducts business through Unified Names, Inc., 960 41st Street, Miami Beach, Florida 33140.

11. On information and belief Defendant Hosting Services Group Inc. (HSG) is owned or controlled by Defendant RegisterFly, Inc. or Defendant Unifiednames Inc.

12. Defendant John Naruszewicz ("Naruszewicz"), was, upon information and belief and at the times relevant to this complaint, the Vice President of Defendant RegisterFly, a 50% shareholder of Defendant UNI and active in the day to day running of the Defendant RegisterFly. However, after the Order entered March 7, 2007 by the Honorable Peter G. Sheridan it appears that he may no longer have an interest in the Defendant RegisterFly.

13.     Defendant Kevin Medina as agent for RegisterFly ("Medina"), was, upon information and belief and at all times relevant to this complaint, President of Defendant RegisterFly and a 50% shareholder of Defendant UNI and active in the day to day running of RegisterFly. Based on the Order entered by the Honorable Peter G. Sheridan on March 7, 2007, Defendant Medina appears to now be the sole owner of Defendant RegisterFly. (Exhibit 28, Order dissolving prior consent Order).

14.     Defendant Kevin Medina, personally and individually, was, upon information and belief and at all times relevant to this complaint, violating his fiduciary duty to the Plaintiffs by depleting the assets of Defendant RegisterFly for personal use, effectively precluding Defendant RegisterFly from fulfilling its contractual obligations to the Plaintiffs and precluding the recovery of any damages if a receiver is not appointed. (see Exhibit 20  UNI Complaint and Exhibit 10 - ICANN 20070221 Letter re RegisterFly breaches.)

15.     Defendant, eNom Inc. (hereinafter eNom) is a corporation with its principal place of business in Bellevue Washington.  It engages in business as a registrar accredited by ICANN and conducts substantial business in this District.

16.     Defendant Internet Corporation for Assigned Names and Numbers ("ICANN"), is a California non-profit corporation with its principal place of business in Marina Del Ray, California.  Defendant is the entity charged with the technical management of the Internet's addressing system, known as the domain name system ("DNS").

## ALLEGATIONS COMMON TO ALL CLAIMS

17.     Plaintiff Anne Martinez brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2) and (b)(3) on behalf of herself and all other individuals and entities with substantially similar claims arising out of the actions alleged in this complaint.

18.     The members of the Class are so numerous that joinder of all members is impracticable.  Although the exact number of persons in the Class is unknown to Plaintiff at the present time – a more precise number could only be determined through discovery, however RegisterFly.com boasts of having 900,000 customers with over 2,000,000 domains hosted.

19.     ICANN has advised that in January alone in an excess of 75,000 persons domiciled throughout the United States and 120 foreign countries lost their domain registrations due to the gross negligence of ICANN and RegisterFly. The identity of all members of the Class is not currently known as ICANN has not forced RegisterFly to comply with disclosure, but may be ascertained and identified from records maintained by Defendants, and the members may be notified of the pendency of this action by mail or electronic medium. Due to the size of the Class, the geographic dispersion of Class members and Plaintiff's inability to identify all members of the Class, it would be impracticable to join all members in this action.

20.     There exist questions of law and fact common to all class members including but not limited to:

1) Breach of Contract

2) Breach of Fiduciary Duty

3) Who was paid or not paid to register names, and / or protect already registered names for web sites on the Internet as between all defendants.

4) Who, as between all defendants, breached their duty to the Plaintiffs as a class.

21. The questions of fact and law raised in this Complaint are common to all members of the Class and the claims asserted by the named Plaintiff are typical of the claims of the Class.

22. The named Plaintiff will adequately and fairly represent the interests of all members of the class.

23. Plaintiff's Counsel is experienced and able, and will be competent in the prosecution of a complex class action law suit.

24. The Defendants have acted or refused to act on grounds generally applicable to the Class, thereby, making final relief with respect to the Class as a whole appropriate.

25. Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the Defendants.

26. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.

27. Furthermore, as the damages suffered by individual Class members may be extremely high, for many of the individuals it may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.

28. There will be no difficulty in the management of this action as a class action.

## JURY TRIAL DEMAND

29.     Plaintiff demands trial by jury on all claims except the Count regarding Declaratory Judgment, and for injunctive relief, for which no jury is available.


## FACTUAL BACKGROUND

30.     Plaintiff Anne Martinez is the owner and operator of a home based business that substantially relies on the use of internet domains purchased through Defendant RegisterFly.

31.     Plaintiff Anne Martinez will suffer immediate and irreparable harm in the permanent loss of business if the Defendants are not Ordered to release her main web address with no interruption in service: GoCertify.com, as well as other domains she owns.

32.     Plaintiff Anne Martinez's site at GoCertify.com is set to expire this month yet she has been prevented from transferring it due to the fraudulent conduct of the Defendants.

33.     Plaintiff Anne Martinez is currently blocked from moving her web site since Defendant Kevin Medina and RegisterFly have converted the ownership from Ms. Martinez to RegisterFly.

34.     Plaintiff Anne Martinez currently has contracts in place which will vanish if the domain is turned off, even if the Defendants don't actually release the domain for resale, she will suffer irreparable harm.

35.     On March 1, 2007, Anne Martinez received an email notice from RegisterFly stating that domain renewals were due for GoCertify.com and SearchCertify.com, and that GoCertify.com would expire on March 18, 2007 if not renewed.

36.     Due to her past experience with Registerfly.com, Anne intended to transfer the domain elsewhere as she had several other domains in the past and renew it at the new registrar. However, due to the protracted periods of time and multiple phone calls required to obtain the authorization code needed to transfer domains in the past, she feared she would not be able to get the code before the domain expired, and thus decided to go ahead and renew it at RegisterFly and then work through the difficult transfer process.

37.     Later that day, Anne Martinez went to the RegisterFly Web site to renew several domains including GoCertify.com. The Web site was running very slowly, but Anne was able to log in and begin the renewal process. She selected 3 domains to renew, including GoCertify.com. She entered her credit card information and clicked to submit the transaction. At first the transaction appeared to process, but then a "page not found" error came up. There was no way to tell if the renewal had gone through or not. A few minutes later, Anne Martinez received an automated notice from RegisterFly stating that "We were unable to renew the following names in your account" listing only GoCertify.net. Thus it was impossible to tell if the GoCertify.com renewal had gone through or not. (See Exhibits 2 & 3)

38.     Concerned that the renewal had failed, Anne went to another registrar's Web site where she had been transferring her RegisterFly registered domains as they became due – GoDaddy.com. There she submitted **and paid for** the transfer of 3 domains including GoCertify.com. The transaction was accepted. Anne received an automated email from

GoDaddy stating that an email would be sent to the administrator of record for each domain so that the administrator could confirm that the domain transfer was requested by an authorized person. That email never arrived.

39.     On or about the next day, Anne returned to the GoDaddy Web site and checked on the status of the domains she had requested to transfer. Each one listed that administrator confirmation was pending, and each one listed "support@registerfly.com" as the administrator email address.

40.     Stunned, Anne immediately checked the Internet whois.com record for the domain, and found that all the contact information, including administrator, technical, and billing had been changed to RegisterFly's own information. In addition, the person listed as owning the name was no longer Anne Martinez. Instead it appeared to contain random characters.

41.     Very worried now that the GoCertify.com domain was taken over by RegisterFly and thus was essentially stolen from her control, Anne called RegisterFly technical support. She got a recording saying she was 6th in line, and that wait time was about 6 minutes. Thirty minutes later, she was still being told she was #6, and that the wait would only be a few minutes. Obviously this was not true, so she hung up.

42.     The next morning, she called immediately when the technical support line was listed as opening. She got a technical support person. When she explained the problem and the urgency of its resolution, the support person told her it was a system problem and would be fixed the same day.

43.     The next day, the situation had not changed. Anne called the support number again and was told the same thing again. On or about the next day, Anne had a subcontractor,

Sara Devine, try calling technical support. Sara Devine got through as well, and was also assured it would be fixed shortly. It never was. Anne was powerless to keep her main domain, GoCertify.com, which supports her family, from expiring or otherwise becoming inaccessible to her and causing her business to fail.

44.     At this point, Anne Martinez started searching the Internet, certain that she could not be the only person encountering this situation. Sure enough, she found information to indicate that many people were locked out of their domains, unable to renew them, unable to transfer them, had them disappear from their RegisterFly accounts, and had even lost them due to these issues.

45.     Next, Anne went to the section of the RegisterFly.com control panel where domain contact information is set, hoping that if she put in her information again, it would return to its proper status. But when she submitted the contact information, she received the error message "Domain not found." Just in case the changes had gone through anyway, she rechecked the Internet whois information the following morning. The domain was still listed as belonging to RegisterFly.

46.     Very concerned and upset about what might be happening to her other domains that were registered through RegisterFly, Anne began checking the whois records for all of them. Several of them had been altered to have RegisterFly listed as the owner and contact, and one of them, CertificationBooks.com, was listed as registered to a company named "Drake Software."

47.     On March 12, 2007, Plaintiff Anne Martinez discovered that she has lost one of the domain names (SearchCertification.com.):

1) On March 8 2002 Plaintiff Anne Martinez first registered
   SearchCertification.com for a 2 year term with RegisterNames.com.

2) On or about December 29th 2003 she transferred this domain registration
   to RegisterFly.com, which added 1 year to the remaining term, making it
   registered through March 8 2005.

3) On or about January 24th 2005 it was renewed at RegisterFly.com for one
   year to March 8th 2006.

4) On or about March 6th 2006 Plaintiff Anne Martinez renewed
   SearchCertification.com for another year at RegisterFly.com extending to
   the registration to March 8th 2007.

48.    For over two weeks Plaintiff Anne Martinez has been diligently attempting to
renew and or transfer the domain SearchCertification.com, however because RegisterFly.com
has her site blocked, and because ICANN has done nothing to enforce the provisions of
RegisterFly.com's Registrar Accreditation Agreement ("RAA") with ICANN, Anne was unable
to renew or transfer this domain, and it has gone into expiration status.


49.    Defendant ICANN is responsible for coordinating the management of the
technical elements of the DNS to ensure universal resolvability so that all users of the Internet
can find all valid addresses. It does this by overseeing the distribution of unique technical
identifiers used in the Internet's operations, and delegation of Top-Level Domain names (such as
.com, .info, etc.) Other issues of concern to Internet users, such as the rules for financial
transactions, Internet content control, unsolicited commercial email (Spam), and data protection

are outside the range of ICANN's mission of technical coordination. Ensuring predictable results from any place on the Internet is called "universal resolvability." Without DNS, the same domain name might map to different Internet locations under different circumstances, which would reduce the predictability and stability that allows the internet to be a reliable backdrop for commerce.

50.    ICANN's Bylaws specifically give it the duty to "tak[e] what ever whatever steps are necessary to protect the operational stability of the Internet", more specifically:

> **Section 2. RESTRICTIONS**
>
> ICANN shall not act as a Domain Name System Registry or Registrar or Internet Protocol Address Registry in competition with entities affected by the policies of ICANN. **Nothing in this Section is intended to prevent ICANN from taking whatever steps are necessary to protect the operational stability of the Internet in the event of financial failure of a Registry or Registrar or other emergency.**

51.    The Internet grew rapidly over the last decade as a place to do business and no international legal standards existed to resolve domain name disputes. The Internet Corporation for Assigned Names and Numbers (ICANN), the organization responsible for, among other things, management of the generic top level domains such as .com, .net and .org, was in urgent need of a solution to the dispute resolution problem.

52.    ICANN adopted the Uniform Domain Name Dispute Resolution Policy (UDRP), which went into effect on December 1, 1999, for all ICANN-accredited registrars of Internet domain names.

53.    RegisterFly has breached sections 3.4, 3.9, and 4.1 of Registrar Accreditation Agreement ("RAA"), which RegisterFly has with ICANN.

54.     Under section 5.3.4 of the RAA, RegisterFly is supposed to only have 15 working days to cure the breaches.

55.     When the breaches are not cured in that period, ICANN must give notice of termination of the RAA, after which RegisterFly would have had to comply or lose it's ability to continue to defraud the public and harm interstate Commerce.

56.     ICANN staff met with executive management of RegisterFly on at least three occasions over the past year and exchanged numerous email messages and telephone calls in an attempt to resolve the issues; however, ICANN engaged in a systematic avoidance and gross breach of its duties to the Plaintiff and similarly situated entities across the globe.

57.     Despite repeated fraudulent assurances of progress, the volume of complaints directed to ICANN about RegisterFly continues to grow on a daily basis and ICANN has only just begun to act in the last week.  Regardless, nothing has been done to protect individuals who have already lost their domain ownership to speculators even after they had fully paid renewal fees to an ICANN-accredited registrar.

58.     ICANN is fully aware of, and has published a letter regarding, RegisterFly's on-going breaches of the RAA.

59.     Section 4.1 of RAA obligates ICANN-accredited registrars to abide by any Consensus Policies.

60.     One such applicable Consensus Policy is the 12 July 2004 Policy on Transfer of Registrations between Registrars ("Inter-Registrar Transfer Policy", http://www.icann.org/transfers/policy-12jul04.htm.) (attached as Exhibit 18)

61.     The Inter-Registrar Transfer Policy ("Transfer Policy") limits the situations in which a losing Registrar may deny a transfer request. (Exhibit 18 Inter-Registrar Transfer Policy at section A.3).

62.     In addition, under Section A.5, "Registrars must provide the Registered Name Holder with the unique 'AuthInfo' code within five (5) calendar days of the Registered Name Holder's initial request if the Registrar does not provide facilities for the Registered Name Holder to generate and manage their own unique 'AuthInfo' code." If a Registered Name is in Registrar Lock Status, the losing Registrar may not deny a transfer request unless the Registered Name Holder is provided with the reasonable opportunity and ability to unlock the domain name prior to the Transfer Request. (Inter-Registrar Transfer Policy at section A.3)

63.     RegisterFly and ICANN agreed to abide by all Consensus Policies addressing "the transfer of registration data upon a change in registrar sponsoring one or more Registered Names." (specifically section 4.1)

64.     As part of this obligation, RegisterFly is bound to follow the Inter-Registrar Transfer Policy, which specifies, at section A.3, the obligations of a losing registrar; and ICANN is bound to enforce the provisions in order to protect the Plaintiff and similarly situated other parties.

65.     Under section A.3, RegisterFly and eNom have five days from the time that a registrant requests transfer in which to provide requested information and assist a Registered Name Holder in the process for transferring registrations to a different Registrar.

66.     Under section A.5, if the transfer of a Registered Name requires additional security codes, RegisterFly and eNom **must** provide these "AuthInfo" codes within five days.

67.     Neither RegisterFly nor eNom may not block a Registered Name Holder's request to transfer a locked domain name without providing an opportunity to unlock the name.

68.     ICANN has a contractual duty to enforce the rules and regulations to protect the public.

69.     Despite these explicit obligations, RegisterFly and eNom have withheld approval or otherwise acted to block requested transfers of Registered Names, and ICANN has refused to enforce the requirements to the detriment of Plaintiff.

70.     Before November 3, 2006 the plaintiff Anne Martinez made several requests to RegisterFly.com transfer domain names including but not limited to cheapwebtricks.com, but was unable to get a response from RegisterFly. (Exhibit 2, Godaddy.com notice that domains can't be moved)

71.     Ms. Martinez completed the "Support Ticket" as designated by RegisterFly and sent it into RegisterFly on November 3rd 2006, but did not receive a timely response.

72.     Anne Martinez competed a second the "Support Ticket" and sent it into RegisterFly.com on November 7th 2006, but did not receive any response for more than five days, in violation of the RAA in place between ICANN and RegisterFly.

73.     According to the attached Exhibit 10 (ICANN Letter re: RegisterFly Breaches) The following are seven specific examples of RegisterFly's, eNom's and ICANN's breach of duty to other similarly situated entities who registered domain names through their collective and individual services, and failure to comply with its contractual obligations:

    1) Failure to provide authorization info codes

A) A complainant known to ICANN, but currently kept confidential by
ICANN, by a valid member of the proposed class of Plaintiffs,
informed ICANN that he had requested "AuthInfo codes" for four
Registered Names but that RegisterFly, and/or eNom did not provide
the codes, despite the lapse of over five days, and ICANN did nothing
to require the same.

B) A complainant known to ICANN, but currently kept confidential by
ICANN, by a valid member of the proposed class of Plaintiffs,
informed ICANN that he requested AuthInfo codes for fifteen
Registered Names but that RegisterFly and/or eNom did not provide
the requested codes within one week of the request and ICANN did
nothing to require the same.

C) A complainant known to ICANN, but currently kept confidential by
ICANN, by a valid member of the proposed class of Plaintiffs,
informed ICANN that she requested an AuthInfo code for her
Registered Name, but that RegisterFly and/or eNom ignored the
request for at least six days and never issued an AuthInfo code and
ICANN did nothing to require the same.

D) A complainant known to ICANN, but currently kept confidential by
ICANN, by a valid member of the proposed class of Plaintiffs,
informed ICANN that she requested AuthInfo codes for both of her
Registered Names on 12 February 2007, but that as of 19 February

2007, RegisterFly and/or eNom had not provided any AuthInfo codes and ICANN did nothing to require the same.

E) A complainant known to ICANN, but currently kept confidential by ICANN, by a valid member of the proposed class of Plaintiffs, informed ICANN that as of 22 January 2007, RegisterFly and/or eNom had not responded to his 12 January 2007 requests for AuthInfo codes to transfer his Registered Names and ICANN did nothing to require the same.

F) A complainant known to ICANN, and a valid member of the Class of Plaintiffs stated that several times since 4 February 2007 he requested that his domain name (Names redacted by ICANN) be unlocked, but that RegisterFly did not act on these requests, causing the transfer to be denied.

G) A complainant known to ICANN, and a valid member of the Class of Plaintiffs stated that on 15 February 2007 he requested that his Registered Names (Names redacted by ICANN) be unlocked, but that RegisterFly reported that it could not unlock the domains. The domain names remain locked to date.

74.    RegisterFly's demonstrated failure to follow the Inter-Registrar Transfer Policy is not simply a violation of the RAA; it also frustrates and impedes ICANN's stated purpose in providing a "straightforward procedure for domain name holders to transfer their names from

one ICANN-accredited registrar to another should they wish to do so." (*See* Exhibit 18 and http://www.icann.org/transfers/.)

75.     Each registrar's compliance with these procedures is essential for this Consensus Policy to work.

76.     Violations of this policy by RegisterFly and eNom, as alleged herein, harm both the plaintiffs and other registrars, and affect interstate and international commerce.

77.     RegisterFly's and eNom's violation of the Transfer Policy provides an independent ground for termination of RegisterFly's and eNom's accreditation since all such violations have not been cured within 15 days of notice (some are still on going after notice to ICANN for over six months).

78.     As late as March 8, 2007 ICANN published the following as an update on their web site, http://www.icann.org/announcements/announcement-2-08mar07.htm: "It should be noted that a significant percentage of the data obtained [from RegisterFly] are cases where customer information is hidden via a privacy service (in this case known as "ProtectFly"). We have provided additional questions to RegisterFly regarding how that data can be maintained in a manner that would permit access in the event that RegisterFly remains unable to fulfill its role as a registrar. If a name is hidden through a service of this kind, it is possible that no one aside from the provider of the privacy service can identify the customer; therefore data escrow may be insufficient for ICANN to protect that data. In making a choice to use a proxy/privacy service, customers should be aware of balancing privacy against access to data."

79.     Plaintiff Martinez never asked for nor gave permission for either RegisterFly or Medina to exercise any ownership interest in her domains, or convert the ownership of her domain names to RegisterFly.

80.     Plaintiff Martinez never wanted, nor opted for, any "ProtectFly" service. Yet as alleged above RegisterFly has deliberately stolen her ownership in her sites to prevent her from migrating to a competitor.

81.     Section 3.4 of the RAA obligates ICANN-accredited registrars to maintain and update databases containing certain data elements for each active Registered Name it has sponsored within each TLD for which it is accredited. The data points required include:

> 1)  The name and postal address of the Registered Name Holder, administrative contact, technical contact, and billing contact;
>
> 2)  Email address of the administrative contact, technical contact, and billing contact;
>
> 3)  Voice telephone number of the administrative contact, technical contact, and billing contact;
>
> 4)  Fax number, where available, of the administrative contact, technical contact, and billing contact; and
>
> 5)  Any other Registry Data that Registrar submitted to the Registry Operator.

82.     In addition, ICANN-accredited registrars are bound to maintain certain records relating to dealings with Registry Operators and Registered Name Holders for three years, and

make these records available for ICANN inspection. The Registrar must maintain the following information:

> 1) 3.4.2.1 In electronic form, the submission date and time, and the content, of all registration data (including updates) submitted in electronic form to the Registry Operator(s);
>
> 2) 3.4.2.2 In electronic, paper, or microfilm form, all written communications constituting registration applications, confirmations, modifications, or terminations and related correspondence with Registered Name Holders, including registration contracts; and
>
> 3) 3.4.2.3 in electronic form, records of the accounts of all Registered Name Holders with Registrar, including dates and amounts of all payments and refunds.

83.    However, ICANN has consistently failed in its duty to enforce and protect this information to such an extent that they have become grossly negligent in their conduct entitling the Plaintiff to punitive damages.

84.    This history of gross negligence began as early as October 13th 2004, when ICANN entered into a registrar accreditation agreement with Top Class Names, Inc. without proper background checks.

85.    On or around November 22nd 2004, Top Class Names, Inc. filed a Certificate of Amendment of Certificate of Incorporation with the State of Delaware, changing its name to RegisterFly.com, Inc.. Prior to this time, RegisterFly had only been a reseller of domain names for eNom, Inc. (an ICANN-accredited registrar) and, to a lesser extent, other accredited

registrars, but had not demonstrated the ability to take on the additional responsibilities of being a registrar.

86.     As early as 2005 and 2006, ICANN began seeing a large number of complaints from RegisterFly customers. At that time, most of the complaints involved Registered Names that were registered by RegisterFly not as a registrar, but as a reseller for eNom.

87.     The complaints frequently included allegations that RegisterFly was overcharging (two, three and four times per transaction). Customers reported that RegisterFly did not provide customer service: RegisterFly did not answer emails or support tickets and the call hold time was frequently in excess of 30 minutes.

88.     When the customers would initiate a charge-back through their credit card companies, RegisterFly apparently retaliated by denying the customer access to all of the Registered Names in their account, not just the Registered Name involved in the charge-back transaction.

89.     ICANN was aware of this retaliatory and criminal behavior but breached their duty to enforce the regulations, and instead simply forwarded the complaints to eNom.

90.     On January 17th 2006, Tim Cole, ICANN's Chief Registrar Liaison, after receiving numerous complaints regarding RegisterFly, chose not to act, but simply forwarded the complaint to eNom, mentioning "the unusually high number of complaints we get concerning RegisterFly"; but again, did not act to stop the systematic disregard for the regulations, which ICANN has a duty to enforce.

91.     eNom responded with an explanation from RegisterFly (as the reseller), which indicated that RegisterFly intended to move the domain names under its management to its own

credential (separate from eNom's). In this same response, RegisterFly indicated that 90% of its complaints involved charge-backs, but still ICANN did nothing.

92. On February 21st 2006, Tim Cole again contacted eNom (through its then General Counsel, Martin Garthwaite), describing a breach of eNom's RAA occurring through problems with RegisterFly (as reseller) altering customers' Whois data and populating the Whois record with intentionally inaccurate data.

93. At this time, ICANN confirmed with eNom that any Registered Names sponsored through eNom's accreditation – even if processed through RegisterFly a reseller – were eNom's responsibility, but ICANN did nothing to resolve this Registrar's theft of ownership (over a year ago) nor revoke this Registrar's accreditation, but instead continued to hold out to the public that the registrar was safe and accredited.

94. In April 2006, ICANN continued to receive complaints about RegisterFly as both a registrar and as a reseller.

95. RegisterFly's customers reported being inexplicably locked out of their accounts. Additionally, complaints stated that domain names were disappearing from customer accounts, a direct undermining of the exact responsibility ICANN was created to protect; yet ICANN did nothing to stop this abuse.

96. Kevin Medina, RegisterFly's listed primary contact, contacted Mike Zupke, ICANN's Registrar Liaison Manager, and stated these issues were as a result of "growing pains" and ICANN did nothing.

97. On April 18th 2006, Mike Zupke with full knowledge of the breaches, chose not to enforce the terms of the agreement, choosing not to protect the plaintiffs, merely expressing

ICANN's "concerns" regarding the volume of complaints against RegisterFly and the fact that many of these complaints concerned charge-backs to RegisterFly.

98.    The complaints continued, and in May 2006 started to include reports of problems with "stolen" registrations and RegisterFly reseller renewals, which actually resulted in transferred registrations to RegisterFly as a registrar, but still ICANN did nothing.

99.    On May 19th 2006, ICANN received a complaint from a Registered Name Holder that after a reportedly heated argument with RegisterFly, the Whois information for the 220 Registered Names held by that party had been changed to reflect "Kevin Medina" as the Registered Name Holder instead of the customer.  In response to this blatant theft, ICANN still did nothing.

100.    ICANN simply requested documentation pursuant to section 3.4 of the RAA but received no response.  On 26 May 2006, ICANN announced an on-site audit to obtain the requested information, but did not follow through.

101.    On June 6th 2006, Kevin Medina agreed to respond to ICANN's request voluntarily, but did not, and ICANN again did nothing.

102.    On June 12th 2006, RegisterFly provided incomplete records to ICANN.

103.    On June 15th 2006, in response to ICANN's audit notice and in addition to dealing with the requested documentation, RegisterFly, through its representatives Kevin Medina and Glenn Stansbury (VP of Operations for RegisterFly), came to ICANN's Marina del Rey headquarters to meet with ICANN staff to discuss the inordinate number of complaints ICANN had received regarding RegisterFly.

104.    Mr. Medina and Mr. Stansbury conspired to mislead ICANN that RegisterFly was working hard to improve its customer service and that it was working to relieve the pressure on the RegisterFly employees who worked in the Risk/Fraud department so that charge-backs would no longer be an issue, but did not address the issue of fraud and theft.

105.    Mr. Medina disclosed to ICANN that employees in RegisterFly's Risk/Fraud department were paid strictly on commission, but that the policy would be changed as a result of RegisterFly's discussions with ICANN. This policy in and of itself should have shut the company down!

106.    Over the next few months, complaints to ICANN about RegisterFly's handling of charge-backs continued, and ICANN did nothing as the complaints regarding RegisterFly increased.

107.    In particular, ICANN began to see a number of complaints from customers who experienced difficulty in renewing their registrations because eNom and RegisterFly were battling to steal customers from one another now that ICANN had accredited RegisterFly as a registrar so it was now competing with eNom. ICANN made it clear from its pattern of neglect and lack of enforcement that both eNom and RegisterFly could hold innocent owners hostage.

108.    In an effort to keep customers paying their company, and not allow the domain owner to migrate to RegisterFly or another competitor, eNom restricted the authorization codes from the Plaintiff and others similarly situated.

109.    These "renewal/transfers" were apparently transactions in which RegisterFly (as registrar) offered RegisterFly's (as reseller) eNom-managed customers incentives to migrate to RegisterFly's accreditation.

110.    ICANN did not receive complete documentation in response to its audit request of 26 May 2006 until 4 October 2006, and yet they did nothing in complete violation of their own policy.

111.    Upon review of the complete documentation, ICANN determined that the provided records demonstrated irregularities, but ICANN still did not act in 15 days.

112.    ICANN waited until 20 November 2006, when Tim Cole requested that RegisterFly meet with ICANN in person at the upcoming Sao Paulo ICANN meeting because RegisterFly was not responding to email or telephonic inquiries about, among other things, the ever-increasing complaints from RegisterFly customers about over-charging.

113.    Again ICANN did not require compliance within 15 days as is required, but simply told RegisterFly they could "talk" when they were all together enjoying a vacation in Sao Paulo, Brazil!

114.    On 3 December 2006, Tim Cole, Mike Zupke, and ICANN's Contractual Compliance Director Stacy Burnette met with RegisterFly representatives Mr. Stansbury and Mark Klein (VP of Sales of RegisterFly) in Sao Paulo, Brazil to discuss the continuing issues with RegisterFly. These issues included:

        1) RegisterFly's failure to renew customer names;

        2) customer service failures;

        3) customer billing errors;

        4) nonpayment of ICANN invoices; and

        5) insufficient funding of registry accounts.

115.    At the meeting, Mr. Stansbury and Mr. Klein repeated the previous spurious assurances from RegisterFly that these issues were being corrected and that RegisterFly would be opening a new customer service facility soon.

116.    Ms. Burnette of ICANN provided Mr. Stansbury with a document including the greatest of ICANN's concerns, but still did not demand compliance with the RAA.

117.    Mr. Stansbury promised to respond in writing by January 3rd 2007, but no response was ever received by ICANN.

118.    Mr. Stansbury also asked ICANN to provide his email address and telephone number to all RegisterFly customers who needed assistance, saying that he would personally resolve all complaints.

119.    In January 2007, ICANN continued to receive complaints about RegisterFly in both its registrar and reseller capacities for failing to process transactions, as well as many other general customer service complaints from consumers, other ICANN-accredited registrars, ICANN board members, and the U.S. Department of Commerce.

120.    RegisterFly and Medina systematically billed customers for transactions that were billed and paid were not being effected at the registry.  ICANN was well aware of this fraudulent practice, but still has done nothing to stop the practice even after their letter

121.    In addition, multiple-year renewals and registrations were only processed for one year instead of the number of years that had been paid for.

122.    ICANN still continued to breach its duty and simply requested responses from RegisterFly, but received little or no explanation, and did nothing!

123.    Customers reported that RegisterFly was unresponsive to their inquiries, even those referred directly by ICANN to Mr. Stansbury or Mr. Medina got no response.

124.    RegisterFly and eNom are required to maintain, and provide ICANN with copies for inspection, of records of Registered Name Holder accounts, including payment and other modifications, and including authorizations codes if demanded.

125.    Despite these requirements, ICANN failed to enforce and RegisterFly and eNom have failed to provide ICANN with the complete documentation to satisfy its obligations under section 3.4.

126.    The following are but two examples of RegisterFly's failure to comply with its contractual obligations:

1)    Request on 22 January 2007: Mike Zupke received a voice mail message from a RegisterFly customer seeking assistance with renewal of two domain names: (Names redacted by ICANN). According to the customer, he had been trying since 12 January 2007 to renew his Registered Names or obtain authorization codes to transfer his Registered Names to another ICANN-accredited registrar. On 22 January 2007, Mr. Zupke emailed Mr. Stansbury and Mr. Medina requested, under section 3.4, "copies of all written communications constituting registration applications, confirmations, modifications, or terminations and related correspondence with Registered Name Holders, including registration contracts, between your registrar and this customer, by no later than 29 January 2007." The email message was transmitted again to Mr. Medina on 6 February 2007.

ICANN has not received any response to this Request, and still has not acted to protect the public.

2)  Request on 26 January 2007: Stacy Burnette sent an email to Mr. Stansbury regarding a complaint over seven Registered Names: (Names redacted by ICANN). In accordance with RegisterFly's obligations under section 3.4, Ms. Burnette requested that RegisterFly provide the following documentation by 2 February 2007:

A)  The name(s) and postal address(es) of the Registered Name Holder(s) of the domain names;

B)  The name(s), postal address(es), e-mail address(es), voice telephone number(s), and (if available) fax number(s) of the technical contact(s) for the domain names;

C)  The name(s), postal address(es), e-mail address(es), voice telephone number(s), and (if available) fax number(s) of the administrative contact(s) for the domain names;

D)  The name(s) and (if available) postal address(es), e-mail address(es), voice telephone number(s), and fax number(s) of the billing contact(s) for the domain names;

E)  Records of the submission dates and times, and the content, of all registration data (including updates) submitted in electronic form to the Registry Operators related to the domain names; and

F) Records of all written communications constituting registration applications, confirmations, modifications, or terminations and related correspondence with the Registered Name Holder(s), including but not limited to registration contracts, related to the domain names.

127. On 29 January 2007, Ms. Burnette received a reply email from RegisterFly, which was copied to Mr. Stansbury, stating "Please be advised we are compiling the requested information. Please contact us if you need any other information." The return email included incomplete records, yet ICANN still did nothing!

128. On information and belief ICANN has not received any further response to Ms. Burnette's request.

129. These two examples, as well as other examples of communication by RegisterFly, demonstrate RegisterFly's and ICANN breach of section 3.4 of the RAA.

130. Through its failure to adequately and timely respond the ongoing problem ICANN and RegisterFly are both not only grossly neglecting their respective duties under the contract, but also frustrating the Plaintiff's ability to access her domain.

131. RegisterFly and ICANN have a documented history "failures to adequately provide information to respond to investigation of these issues only amplifies the problem."

132. In addition, RegisterFly's actions in refusing to timely provide ICANN with the requested information, and ICANN's actions in refusing to timely fulfill its responsibility both constitute violations of section 3.4 of the RAA provide an independent ground punitive damages against both.

## ACCREDITATION FEE BREACHES

133. Under section 3.9 of the RAA, ICANN-accredited registrars are obligated to pay yearly and variable fees to ICANN in a timely fashion. RegisterFly had grossly breached its obligations under section 3.9 of the RAA, under which RegisterFly agreed to timely pay its accreditation fees. Despite this ICANN has continued to allow RegisterFly to sign on new unsuspecting members of the public. This is a gross negligence on both ICANN's part and RegisterFly's part.

134. On information and belief, there still is a substantial outstanding balance to ICANN that has failed to be collected.

135. On 10 October 2006, ICANN notified RegisterFly that it had an outstanding balance of $131,422.86 in fees immediately due to ICANN, of which $44,985.16 was over 90 days past due.

136. A month later, on 10 November 2006, ICANN had not received any response from RegisterFly. Mike Zupke called Glenn Stansbury to inquire as to why RegisterFly was not paying its invoices to ICANN. Mr. Stansbury claimed that he was unaware of this issue.

137. Kevin Medina then called Mr. Zupke and claimed to be unaware of the issue but promised to wire $49,000 to ICANN that week and another $44,000 at the beginning of the next week. During that conversation, Mr. Zupke expressed to Mr. Medina that failure to pay ICANN invoices is a breach of RegisterFly's RAA that is could result in proceedings to terminate RegisterFly's accreditation, but that Mr. Zupke had further elected not to enforce that provision, but instead continue to ignore the ongoing problem and continue to breach ICANN's duty to enforce the rules and regulations.

138.    On 4 December 2006, ICANN received a wire transfer from RegisterFly in the amount of $70,000.  ICANN received an additional $59,999 the next day.  On both 11 December and 19 December 2006, ICANN requested from Mr. Stansbury and Mr. Medina payment of RegisterFly's remaining balance, but it was not forthcoming.

139.    Mr. Medina promised that payment would be made on 22 December 2006, but no payment was received, but this time instead of doing nothing as was the habit of ICANN, this time they actually agreed to extend and ignore the violation with a mere promise.

140.    On information and belief a balance remains outstanding and is over 60 days past due but ICANN has yet to act to protect the plaintiff and similarly situated entities.

141.    ICANN-accredited Registrars are bound to pay ICANN in a timely fashion.

142.    RegisterFly failure to cure this breach of its RAA within 15 working days, its non-payment of ICANN fees provide an independent ground for ICANN to proceed to termination of RegisterFly's accreditation, yet ICANN refuses to protect the public even 4 months after notifying RegisterFly of the breach.

ADDITIONAL ISSUES CONCERNING REGISTERFLY'S BUSINESS DEALINGS

143.    On 30 October 2006, ICANN received information from (registry name redacted by ICANN) that RegisterFly was not maintaining a sufficient balance with (registry name redacted by ICANN) to process all of the transfers into RegisterFly that had been requested.

144.    Specifically, this registrar provided ICANN with copies of emails to Mr. Medina that indicated that 592 transfers were failing due to RegisterFly's insufficient funding of its

account. The emails from this registrar to Mr. Medina (dated 24, 26, and 30 October 2006) were all apparently met with silence, causing the registrar to ask ICANN for assistance.

145.    Again ICANN did not act, Mike Zupke simply approached this issue in his conversations with RegisterFly in November, and this issue simply one of the topics to be "discussed between RegisterFly and ICANN at the 3 December 2006 meeting in Sao Paulo, Brazil."

146.    ICANN admits "RegisterFly's failure to properly fund its Registry Accounts places its customers at risk of losing paid for Registered Names." Indeed, RegisterFly customers self-report that such instances have already occurred. Yet ICANN did nothing.

147.    Moreover, a verified complaint filed in federal court by UnifiedNames, Inc. against Mr. Medina allege that in January 2007 alone 75,000 registrations were lost due to RegisterFly's failure to fund its accounts with registries and eNom. (attached as Exhibit 20)

148.    The ongoing gross breach of duty by both ICANN and RegisterFly demonstrate the complete frustration of the RAA, and allow for the plaintiffs to recover punitive damages from both ICAN and RegisterFly.

149.    RegisterFly has consistently demonstrated its inability to retain sufficient funding for Registry Accounts, making it necessary for this Court to enter an immediate injunction as RegisterFly may be bankrupt or insolvent.

150.    On March 2nd the Honorable Peter G. Sheridan entered a consent order (attached as Exhibit 25 Consent Order) which preserved assets, however on March 8th he vacated that order and put Mr. Medina back in complete control of all assets even as he is alleged by this

business partner of embezzling money (see Exhibit 20 Complaint), and he is converting domains owned by others to his own name (Exhibit 10 Letter from ICANN).

151.    As noted above, section 5.3.4 of the Registrar Accreditation Agreement agreed in October 2004 between RegisterFly and ICANN provides that notice of termination of RegisterFly's accreditation may be given if any breach is not cured within 15 working days, yet ICANN has breached their duty to protect the public.

152.    RegisterFly's pattern of neglect of its obligations to ICANN, fellow registrars, and customers demonstrated by the above circumstances constitute a pattern of tortious behavior.

153.    Though RegisterFly agreed to such commitments as timely payment of fees, maintenance and provision of required documentation, and the procedures to facilitate the free transfer of domain names in its October 2004 accreditation agreement, these commitments have systematically been breached.

154.    According to the letter dated Kurt J. Pritz Senior Vice President, Services from Kurt J. Pritz Senior Vice President of ICANN "The above recitation demonstrates that RegisterFly has repeatedly taken what appears to be a cavalier attitude toward the promises it made." Yet ICANN has still chosen not to act.

155.    RegisterFly's and ICANN's conduct has fallen far short of both their responsibilities to the public and the RAA contract and subsequent agreements.

156.    In the ICANN letter of February 21 2007 by Kurt J. Pritz the agency again lays down a demand that the breaches be cured within 15 days, yet as of the filing of this complaint, 15 days have again passed and RegisterFly is not in compliance, RegisterFly is still in business

defrauding the public, and the Plaintiff still does not have ownership of her domain names back from RegisterFly.

157. As of March 7th 2007 the Public Interest Registry currently has about 17,000 registrations in force from RegisterFly.com, and they are in the process of determining how many are in a negative status. "RegisterFly.com currently has less one dollar in its account with PIR ('Public Interest Registry')".

158. In order not to prejudice the innocent victims of this situation, (the registrants) PIR is planning to restore the names that are currently in RGP or RHP status.

159. They will place all RegisterFly registrations temporarily on "Delete prohibited" status, and they will restore any RegisterFly registrations that are currently on "Pending Delete" status. However, on information and belief PIR is not able to help in the cases like the Plaintiff where eNom was the original registrar and RegisterFly has now converted the ownership.

160. After RegisterFly no longer had to register its customers through eNom, both eNom and RegisterFly, intent on keeping customers with their respective businesses, acted with the apparent authority to register domain names with ICANN on RegisterFly's behalf – agency was reasonably assumed by Plaintiff.

161. Among other things, RegisterFly knew, or should have had reason to know, that during all relevant periods herein, eNom prominently displayed RegisterFly's trademarks and logos on eNom's website in a manner calculated to conceal the actual relationship with RegisterFly; intending to, or with the disparate effect of, reasonably leading the Plaintiff to believe eNom, and its employees and agents, were acting directly on behalf of RegisterFly, and that registrations issued by eNom were valid with RegisterFly.

162. Additionally, the web advertising which was intended to, or had the result of, reasonably leading the Plaintiff to believe that eNom, its employees and agents were acting directly for RegisterFly and domain names registered by them were validly owned by the Plaintiff.

## CAUSES OF ACTION

**COUNT I :**       **BREACH OF CONTRACT AS TO REGISTERFLY & ICANN**

163. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

164. That Plaintiff has privity with both Defendant RegisterFly and Defendant ICANN.

165. Defendants breached express and implied warranties made at the time of the Plaintiff's purchase of her domain names and registration.

166. As a result of the Defendants' breaches, the Plaintiff has suffered direct and consequential losses that the Defendants knew or reasonably should have known would result.

167. Plaintiff has been damaged by Defendants' breach of contract in an amount to be proven at trial.

**COUNT II :**       **DETRIMENTAL RELIANCE AS TO ALL DEFENDANTS**

168. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

169. Defendants RegisterFly and ICANN made promises of reliability and accountability to Plaintiff that she reasonably relied on when security and continuing to use RegisterFly to purchase her domain and maintain its registration.

170. The Plaintiff's reliance on the Defendants' promises cause her significant and specific harm.

171. If the promises and assurances made by the Defendants are not enforced against them, Plaintiff will suffer significant injustice.

172. Plaintiff reliance on RegisterFly and the Duties which it claims publicly on it's web site was reasonable, foreseeable and intended by RegisterFly.

173. Plaintiff reliance on ICANN's RAA with RegisterFly and the duties to protect the public which ICANN claims publicly on it's web site was reasonable, foreseeable and intended by ICANN.

174. As a direct and proximate result of Plaintiff' reliance on RegisterFly' promise, the Plaintiff has suffered and is entitled to compensatory damages, in an amount to be proven at trial.

**COUNT III :        UNJUST ENRICHMENT AS TO ALL DEFENDANTS**

175. Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

176. Plaintiff, and those similarly situated, have paid millions in fees to each of the Defendants as valuable consideration for the respective services of each Defendant in securing

and protecting the Plaintiff's domain registration, including a portion of each domain fee going to ICANN for the policing and regulating of the registration process.

177.    Defendants have had an unearned benefit conferred on them by their failure to reasonably provide the service for which the fee or a portion thereof was paid.

178.    Defendant ICANN has received unjust enrichment from the Plaintiff and those similarly situation in an amount to be determined at trial, and have failed or refused to provide the service for which they were paid.

179.    Plaintiff has suffered and is entitled to compensatory damages, in an amount to be proven at trial.

**COUNT IV :       SIMPLE NEGLIGENCE AS TO REGISTERFLY, ENOM, & ICANN**

180.    Plaintiff reallege each allegation in each of the paragraphs above as if fully set forth herein.

181.    RegisterFly's, eNom's and ICANN's actions as alleged in this complaint are a breach of it's implied duty of good faith and fair dealing with regard to its contractual relationship with Plaintiff.

182.    Plaintiff has suffered and is entitled to compensatory damages, in an amount to be proven at trial.

**COUNT V :        GROSS NEGLIGENCE AS TO REGISTERFLY, ENOM, & ICANN**

183.    Plaintiff reallege each allegation in each of the paragraphs above as if fully set forth herein.

184.  Defendants RegisterFly's, eNom's and ICANN's conduct as alldged in this complaint is so willfull and wanton as to show a complete disregard to the plaintiffs, and to constitute malice, fraud, gross negligence and/or oppression, as a matter of law, which was not a product of mistake of fact or law, honest error of judgment, over zealousness, mere negligence or other human failing.

185.  Defendants' actions are so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

186.  An award of punitive damages is necessary to punish Defendants and to deter others from the same or similar conduct.  The public interest would be served by the deterrent effect of an award of punitive damages against Defendants in an amount to be determined at trial.

## COUNT VI :  BREACH OF FIDUCIARY DUTY AS TO ICANN

187.  Plaintiff reallege each allegation in each of the paragraphs above as if fully set forth herein.

188.  Defendant ICANN owed Plaintiff a fiduciary duty to protect Plaintiff, and millions of other similarly situated entities against fraudulent, irresponsible, and detrimental behavior by Registrars it certifies, including RegisterFly and eNom.

189.  The Defendant breached its fiduciary duty to Plaintiff and that this breach was the proximate cause of damages suffered by Plaintiff.

190.  The Plaintiff is entitled to recover an amount of damages to be determined at trial.

**COUNT VII :**     **CONVERSION AS TO REGISTERFLY, KEVIN MEDINA, & ENOM**

191.    Plaintiff reallege each allegation in each of the paragraphs above as if fully set forth herein.

192.    Plaintiff has paid valuable consideration for the Domain Names she purchased from Defendants. Plaintiff has had the use of these domains names confiscated by the Defendant RegisterFly, Kevin Medina, and eNom.

193.    Defendants' unilateral and arbitrary confiscation of the Plaintiff's domain names deprives Plaintiff of the use, benefit and enjoyment of a valuable property interest and constitutes unlawful conversion.

194.    Plaintiff is entitled to recover an amount to be determined at trial from Defendant RegisterFly, Kevin Medina, and eNom for the conversion of these domains names.

**COUNT VIII :**     **UNFAIR AND DECEPTIVE TRADE VIOLATION OF NCGS 75 AS TO REGISTERFLY, KEVIN MEDINA, & ENOM**

195.    Plaintiff reallege each allegation in each of the paragraphs above as if fully set forth herein.

196.    Defendants RegisterFly and Medina acted in such a way that was fraudulent, misrepresentative, and Defendants systematically overcharged clients, behavior which is clearly protected against by N.C. Gen. Stat. Chapter 75 and the prohibition of Unfair and Deceptive Trade Practices.

197.    The practices were affecting commerce as they involved the sale of internet domain names and the maintenance of those domains.

198.     These practices were the proximate cause of harm suffered by the Plaintiff and her businesses.

199.     The Plaintiff is entitled to recover treble damages.

**COUNT IX :          FRAUD AS TO REGISTERFLY & KEVIN MEDINA**

200.     Plaintiff realleges each allegation in each of the paragraphs above as if fully set forth herein.

201.     Defendants RegisterFly's and eNom's conduct as alleged in this complaint constitute fraud as a matter of law.

202.     An award of punitive damages is necessary to punish Defendants and to deter others from the same or similar conduct. The public interest would be served by the deterrent effect of an award of punitive damages against Defendants in an amount to be determined at trial.

**COUNT X :          18 U.S.C. S 1962(C) RICO VIOLATION AS TO REGISTERFLY, KEVIN MEDINA, & ENOM**

203.     Plaintiff realloge each allegation in each of the paragraphs above as if fully set forth herein.

204.     Upon information and belief, from at least February 2005 and continuing through at least the filing of this complaint, RegisterFly, Medina, and eNom, and others known or unknown, unlawfully, willfully and knowingly did combine, conspire, confederate and agree to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise

described in the above paragraphs, respectively to defraud the Plaintiff and other consumers, which was engaged in or which the activities of which affected, interstate commerce through a pattern of racketeering activity in violation of 18 U.S.C. § 1962 (c).

205.    Upon information and belief, Defendants RegisterFly, Medina, and eNom, each individually, or by an agent  agreed to commit at least two predicate acts of racketeering with knowledge that these acts were part of the pattern of racketeering, or in the alternative, each knew about and intended to further the scheme or the illegal acts within the scheme to force domain registrants to keep their name secured by RegisterFly or eNom.

206.    Upon information and belief, RegisterFly, eNom and Medina each understood the scope of the conspiracy and knowingly agreed to participate in the affairs of the enterprise through a pattern of racketeering activity.

207.    Upon information and belief, RegisterFly, eNom and Medina are each "persons" within the meaning of 18 U.S.C. §§ 1961 (3) and 1962(c), distinct from the enterprise described above.

208.    Upon information and belief, at all times relevant to this complaint, RegisterFly and Medina as one interest and adverse to them eNom and unnamed employees or other entity were, and functioned as, two associations-in-fact, which constituted two "enterprises" as defined by 18 U.S.C.§  1961(4).

209.    Upon information and belief, at all times relevant to this complaint, the enterprise was engaged in, and its activities affected, interstate commerce, that is, interstate dissemination of information and sale of an interest in a domain name and other services and money, including the interstate electronic wires.

210.    Upon information and belief, in furtherance of the scheme, RegisterFly, Medina, and eNom each committed and/or aided and abetted the commission of two or more related and continuous predicate acts of racketeering, constituting a pattern of racketeering activity.

211.    The predicate acts of racketeering include but are not limited to the allegations contained in the facts above referenced.  RegisterFly, Medina, and eNom were associated with the racketeering enterprise as part of RegisterFly's and eNom's battle to retain control of domain names which had previously been registered by RegisterFly through eNom.

212.    Upon information and belief RegisterFly and Medina violated 18 U.S.C. §1962(a) by using or investing, directly or indirectly, proceeds for the operation of the racketeering enterprise which were received from a pattern of racketeering which the defendant participated as principal by committing numerous violations 18 U.S.C §1343, wire fraud as detailed herein by intentionally billing for services that were not provided; and/or

213.    Upon information and belief RegisterFly and Medina violated 18 U.S.C. §1962(c) by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by, inter alia, on numerous occasions enticing Plaintiff to purchase services and then bill multiple times for the same service or product through the internet and interstate wire, and wrongfully misrepresenting to Plaintiff through the mail, internet and interstate wire that the items purchased or renewed were actually accomplished.

214.    Each mailing, use of commercial interstate carrier or wiring constitutes a separate act of racketeering in violation of 18 U.S.C. §§ 1341 and 1343. These related predicate acts occurred over a period of several months, were related and continuous, and constitute a pattern of racketeering activity by RegisterFly and Medina and/or;

215.     Upon information and belief eNom violated 18 U.S.C. §1962(d) by conspiring with other unnamed co-conspirators in the fraudulent requirement and refusal to timely release "Authorization codes" as fully alleged in the facts of this complaint and therefore to violate any of the provisions of 18 U.S.C. 1962 and/or aiding and abetting in the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and betting.

216.     Upon information and belief in furtherance of the scheme, Medina, was upon information and belief associated with the racketeering enterprise as its primary manager, and violated 18 U.S.C. § 1962(c) by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by, inter alia, on numerous occasions enticing as yet undetermined Plaintiffs to purchase domain names through the mail, internet and interstate wire and wrongfully misrepresenting to Plaintiffs through the mail, internet and interstate wire that the domain names purchased entitled exclusive ownership when in fact over 75,000 plaintiffs have lost their domain registrations, and causing Plaintiffs to suffer losses as detailed herein.

217.     Each use of wiring constitutes a separate act of racketeering in violation of 18 U.S.C. §§ 1341 and 1343. These related predicate acts occurred over a period of several months, were related and continuous, and constitute a pattern of racketeering activity by Medina; and/or b. 18 U.S.C. 1962(a) by using or investing, directly or indirectly, proceeds for the operation of the racketeering enterprise which were received from a pattern of racketeering which the defendant participated as principal by committing numerous violations 18 U.S.C 1341 swindles and 18 U.S.C 1343, wire fraud as detailed herein; and/or:

218.     Upon information and belief in furtherance of independent and competing schemes Medina and eNom both violated 18 U.S.C. 1962 (b) by acquiring and/or maintaining an interest in or control of the racketeering enterprise by a pattern of racketeering activity consisting of numerous violations of 18 U.S.C 1341, mail fraud and swindles and 18 U.S.C 1343, wire fraud; and/or 18 U.S.C. 1962(d) by conspiring to violate any of the provisions of 18 U.S.C. 1962 and/or aiding and abetting in the commission of at least two predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and abetting.

219.     In furtherance of its own scheme, eNom was engaged in its own racketeering enterprise and violated 18 U.S.C. 1962(a) by using or investing, directly or indirectly, proceeds for the operation of the racketeering enterprise which were received from a pattern of racketeering which the defendant participated as principal by committing numerous violations of 18 U.S.C. 659, embezzlement from interstate or foreign commerce, 18 U.S.C 1341, mail fraud and swindles and 18 U.S.C 1343, wire fraud as detailed herein; and/or 18 U.S.C. 1962(c) by conducting or participating directly in the conduct of the racketeering enterprise through a pattern of racketeering activity by, inter alia, on numerous occasions enticing Plaintiffs to purchase name registration renewals through the internet and interstate wire by refusing to timely release authorization codes.

220.     Each mailing, use of commercial commerce or wiring constitutes a separate act of racketeering in violation of 18 U.S.C. §§ 1341 and 1343. These related predicate acts occurred over a period of several months, were related and continuous, and constitute a pattern of racketeering activity by eNom; and/or 18 U.S.C. 1962(d) by conspiring to violate any of the provisions of 18 U.S.C. 1962 and/or aiding and abetting in the commission of at least two

predicate offenses which were part of the pattern of racketeering in violation of the common law doctrine of aiding and abetting.

221.    As a direct and proximate result of the violation of 18 U.S.C. S 1962(c) by RegisterFly, eNom and Medina described herein, Plaintiffs have been, and continue to be, injured in their business and property in an amount to be determined at trial but, to be trebled pursuant to 18 U.S.C. §1964(c), and for the award of attorney's fees.

**COUNT XI :**     **REQUEST FOR INJUNCTIVE RELIEF AS TO ALL**
                   **DEFENDANTS**

222.    Plaintiff reallege each allegation in each of the paragraphs above as if fully set forth herein.

223.    RegisterFly and Medina have shown a systematic disregard for meeting the obligations to the Plaintiff and those similarly situated.

224.    RegisterFly has unilaterally and arbitrarily refused to cooperate with ICANN, and ICANN has systematically refused to require RegisterFly and Medina to comply with contractual and regulatory agreements.  Plaintiff maintain that such refusals are against public policy and unlawful.

225.    ICANN has now put the Defendants RegisterFly and Medina on notice that they will file for a TRO by posting this information on ICANN's web site at http://www.icann.org/announcements/announcement-02mar07.htm (attached as Exhibit 15).  The relevant portion is quoted below:

- RegisterFly's continuing breaches of the RAA are serious and will be pursued.

- ICANN's primary concern is to do what it can to protect registrant and related data.

- ICANN has provided notice that it will file a suit against RegisterFly in the United States District Court for the Central District of California seeking a temporary restraining order (TRO) requiring RegisterFly to turn over the data requested and to compel an emergency audit of its books and records.

226.    In response to this, and to further placate ICANN, and allow RegisterFly additional time to secret assets and destroy evidence RegisterFly turned over encrypted data that ICANN on March 5th 2007:

> On March 5, 2007, RegisterFly provided a copy of domain name registration data in response to ICANN's request pursuant to RAA section 3.4.3. ICANN is analyzing the data for integrity and completeness. ICANN will respond to RegisterFly with questions regarding aspects of the material provided. This material represents a portion of the material requested in ICANN's letter of February 21, 2007 [PDF, 104K].

227.    However now it appears that "Data escrow may be insufficient for ICANN to protect the Data." It is also unclear whether ICANN can even verify that they have the correct data.

> We have provided additional questions to RegisterFly regarding how that data can be maintained in a manner that would permit access in the event that RegisterFly remains unable to fulfill its role as a registrar. If a name is hidden through a service of this kind, it is possible that no one aside from the provider of the privacy service can identify the customer, therefore data escrow may be insufficient for ICANN to protect that data. In making a choice to use a proxy/privacy service, customers should be aware of balancing privacy against access to data.

228.    Pursuant to the verified complaint (Exhibit 20 UNI Complaint) and the findings of ICANN (Exhibit 10 20070221 Letter Re: RegisterFly Breaches) RegisterFly and Medina pose an immediate risk of absconding with any funds left to pay monetary damages, and the access codes to allow the Plaintiff access to her domains.

229.     This Court should grant an immediate restraining Order along the lines of the March 2, 2007 order of the Honorable Peter G. Sheridan (Exhibit 25 – Order) to preserve the Financial assets of RegisterFly and Medina.

230.     This Court should further grant an immediate restraining Order for the appointment of a Court Receiver to work in conjunction with an appropriate representative from ICANN, but giving the Receiver full power to seize all assets of RegisterFly and Medina where ever located, including the Hard drives which host the critical data to protect millions of people from immediate and irreparable harm.

231.     Even if, in fact ICANN has all the correct Data, which is dubious, then there is still the risk if the original Data is left in the hands of Medina.  On the other hand, if in fact ICANN still does not have complete or accurate data, it is critical that a Court Appointed Receiver be given authorization to seize assets to preserve the Data.

232.     This Court should grant an immediate Injunction requiring eNom to make all "security codes" available to the rightful owner as directed by ICANN, and Ordering ICANN to fulfill its regulatory commitment in order to protect the Plaintiff from immediate and irreparable harm.

233.     There does now exist an actual, justiciable controversy whether Plaintiff and other members of the Class were and/or are entitled to have their domain names and access to said domains turned over instantly by RegisterFly in respect of which Plaintiff are entitled to have a declaration of rights and further relief.

234.     The Affidavit in Support of TRO file simultaneously herewith if fully incorporated by reference.

235.   This Complaint and TRO be sealed until such time as the Court Appointed Receiver is able to secure the hard drives and the digital data of Defendant RegisterFly.

## WHEREFORE, Plaintiff prays:

1.   That this court take this Verified Complaint as an affidavit upon which to base further orders of the court.

2.   As to all counts of the complaint, that this Court certify them as a class under Rule 23 of the Federal Rules of Civil Procedure.

3.   Plaintiff be awarded compensatory damages pursuant to the demands made herein as determined at trial.

4.   Plaintiff be awarded punitive damages pursuant to the demands made herein as determined at trial.

5.   Compensatory Damages be trebled by the court pursuant NCGS 75.

6.   Plaintiff be awarded prejudgment interest at the legal rate.

7.   Plaintiff be awarded attorneys fees as permitted by law.

8.   This Court adjudge the aforesaid conduct by Defendants to be in violation of Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. S1961 et. seq.) and grant Plaintiff an award of three times their actual damages to be proven at trial as a result of Defendants' violation of the RICO law plus attorneys fees as permitted by statute.

9.   This Court declare that Defendant ICANN is legally obliged to honor Plaintiffs' domain registrations until the final resolution of this suit, and then according to any settlement or third

party contract in place at the time.

10. This Court grant equitable and injunctive relief as requested in this complaint, and in the accompanying motion for TRO filed simultaneously herewith.

11. Defendants collectively be ordered to return the domain name SearchCertification.com which expired and was unable to be renewed due to the actions of the Defendants, to the Plaintiff Anne Martinez, and order all similarly situated plaintiffs be restored the domain names which were lost due to the actions of the Defendants.

12. All defendants be ordered to immediately provide the authorization codes necessary to complete the transfers of any and all domain names which were registered by from RegisterFly to a third party of the rightful owners choosing.

13. This Court award Plaintiffs all costs and attorneys fees incurred in connection with this litigation.

14. This Court grant such other relief as it determines to be just and equitable.

This the 13th day of March 2007.

E. CLARKE DUMMIT
Attorney for Plaintiff
213 West Sixth Street
Winston-Salem, NC 27101
(336) 777-8081

**STATE OF NORTH CAROLINA**     )

                                         )         **VERIFICATION**

**FORSYTH COUNTY**                )

The undersigned, being first duly sworn, deposes and says that:

I am the Plaintiff in the above styled action, I have read the foregoing Complaint and know the contents therein; that the same are true to my knowledge, except as those matters herein set out on information and belief, and as to those matters, I believe them to be true.

This the 13ᵗ day of March, 2007.

_anne Martinez_

Anne Martinez

Sworn to and subscribed before

me the this the 15ᵗ day of March, 2007.

_Berly M. Cun_

Notary Public

My Commission Expires 7|8|2008